


ENTERED
07/01/2020

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **STEVEN N HADLEY II; dba CONSTRUCTION DIVERSITY GROUP, *et al*** | § | **CASE NO: 19-30553** |
| **Debtor** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **Z CONSTRUCTORS NATIONWIDE, LLC** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 19-3462** |
| | § | |
| **STEVEN NOEL HADLEY II** | § | |
| **Defendant** | | |

**MEMORANDUM OPINION**
*Resolving ECF Nos. 18 & 22*

Pending before the Court is Z Constructors Nationwide, LLC's ("*ZCN*" *or* "*Plaintiff*") Motion for Summary Judgment ("*Motion*"),[1] and ZCN's Objections to Steven Noel Hadley, II's ("*Hadley or Defendant*") Response ("*Objections*"),[2] both of which the Court heard on July 1, 2020. After consideration of the documents on file, the summary judgment evidence, and arguments of counsel, for the reasons stated herein, ZCN's Objections are overruled and its Motion is denied.

## I. Background & Stipulated Facts

This Adversary Proceeding arises out of a construction contract entered between Construction Diversity Group, LLC ("*CDG*") and ZCN.[3] CDG was a commercial construction

[1] ECF No. 18.
[2] ECF No. 22.
[3] ECF No. 32 at 2.

company that Defendant was the president and managing member of from 2016–2017.[4] ZCN is a commercial general contractor that performs construction work in the healthcare, retail, restaurant, and industrial sectors.[5] On November 30, 2016, ZCN entered into a subcontract agreement with CDG, where ZCN would pay CDG $190,000 (the "*Contract*") for heating and air conditioning work at a project known as the ER Center – Casablanca (the "*Project*"), located at Alamo Ranch Parkway and Westwood Loop in San Antonio, Texas.[6] The Project provided for progress payments to be made by ZCN to CDG as work was completed.[7] In order for progress payments to be made, CDG was required to submit an application and certification for payment, in accordance with pay application instructions ("*Pay Application*").[8]

Pursuant to Article 2.1.5 of the Contract, CDG was solely responsible for paying its subcontractors and material suppliers for labor and materials furnished by them to CDG in connection with the Project.[9] Each Pay Application contained a certification to ensure said subcontractors and materialmen had been paid, stating in relevant part that:

> I also certify that all payments have been made through the period covered by previous payments received from the contractor, to all my subcontractors, and for all materials and labor used in connection with the performance of this contract.
>
> I certify that contingent upon release of said payment, the undersigned does hereby waive, release, remiss [sic] and relinquish any and all rights to claim any lien or liens for work done or material furnished, prior to the date thereof, for the building and premises referenced on said invoice.[10]

As required by the Contract, with each Pay Application, CDG also provided ZCN a Conditional Waiver and Release on Progress Payment ("*Release*") which stated:

---

[4] *Id.*
[5] ECF No. 32 at 1.
[6] *Id.*
[7] *Id.* at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*

> The signer warrants that the signer has already paid, or will use the funds received from this payment to promptly pay in full, all of the signer's laborers, subcontractors, materialmen, and suppliers for all work, materials, equipment, or services provided for or to the above-referenced project up to the date of this waiver and release.[11]

Article 2.4 of the Contract provided that ZCN could withhold payment to CDG if, inter alia, CDG failed to make payments to its subcontractors, laborers, or suppliers.[12]

CDG sent Pay Applications relating to the Project to ZCN, and the Pay Applications contained Defendant's signature. Defendant admitted in responses to requests for admissions, during the course of state court litigation relating to the Project, that he signed each Pay Application that CDG transmitted to ZCN.[13] In response to questions about what happened to the money ZCN paid to CDG, Defendant answered "honestly, I don't know," and "I don't have the slightest clue."[14] ZCN proceeded to file suit against Defendant and CDG in state court, and obtained a default judgment against Defendant, including an award of attorneys' fees.[15]

This led to Defendant and Jessica Hadley filing their joint chapter 7 petition on February 2, 2019.[16] On May 9, 2019, ZCN filed a complaint against Defendant, seeking a determination that Defendant has a nondischargeable debt to ZCN in the amount of $101,382.64 pursuant to 11 U.S.C. § 523(a)(2), (4), and (6).[17] ZCN alleges that Defendant executed Pay Applications and all-bills-paid affidavits claiming that all subcontractors and materialmen under the Contract had been paid, when in fact they had not, thereby obtaining money from ZCN through the use of false pretenses, false representations, and/or actual fraud.[18] Defendant contested these

---

[11] *Id.*
[12] *Id.* at 4.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Case No. 19-30553, ECF No. 1.
[17] ECF No. 1.
[18] *Id.*; *see also* ECF No. 9 at 1–2.

allegations.[19] On July 23, 2019, the Court issued its Comprehensive Scheduling Order ("*Scheduling Order*"), stating that all dispositive motions, responses, replies, and sur-replies were to be filed by February 14, 2020, March 16, 2020, March 23, 2020, and March 30, 2020, respectively.[20]

Pursuant to the Court's Scheduling Order, ZCN filed its Motion for Summary Judgment ("*Motion*") on February 11, 2010.[21] Defendant filed its Response to ZCN's Motion on March 10, 2010 ("*Response*").[22] ZCN followed this up with its Reply to Defendant's Response to ZCN's Motion on March 17, 2020 ("*Reply*").[23] Lastly, Defendant filed its Sur-reply to ZCN's Reply to Defendant's Response to ZCN's Motion on April 1, 2010.[24] The Court now turns its attention to the Objection and Motion.

## II. Summary Judgment Standard

The Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[25] This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J) as ZCN's claims against Defendant involve issues of dischargeability.[26] Venue is governed by 28 U.S.C. §§ 1408, 1409, and is proper because the Court presided over Defendant's bankruptcy.[27]

In the Federal Rules of Civil Procedure, summary judgment is proper when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

[19] ECF Nos. 5, 9 at 2.
[20] ECF No. 11.
[21] ECF Nos. 18–20.
[22] ECF No. 21.
[23] ECF No. 22.
[24] ECF No. 23.
[25] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[26] *See* ECF No. 1.
[27] *See* Bankr. ECF No. 1.

law."[28] Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings. "The moving party bears the burden of establishing that there are no genuine issues of material fact."[29] Rule 56 provides that the movant may support factual positions by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[30]

Rule 56 also provides that an opposing party may object to the material cited by the movant when the material is not presented in a form that is admissible as evidence in the proceeding.[31] Furthermore, a court may consider other material found in the record beyond what has been cited by a party.[32] The ability to consider material found in the record does not mean that the court must engage in a quest to pursue support for the non-movant.[33] The courts must, in determining whether there is a material issue, interpret "the facts and the inferences to be drawn there from in the light most favorable to the nonmoving party."[34]

In order for a fact to rise to the level of a genuine issue of material fact, the fact must be one that "could affect the outcome of an action or allow a reasonable fact finder to find in favor of the non-moving party."[35] In other words, the non-movant bears the burden of showing a

---

[28] FED. R. CIV. P. 56(a); *see also Williams v. Placid Oil Co.* (*In re Placid Oil Co.*), 753 F.3d 151, 154 (5th Cir. 2014).
[29] *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).
[30] FED. R. CIV. P. 56(c)(1)(A)-(B).
[31] *Id.* at (c)(2)
[32] *Id.* at (c)(3)
[33] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).
[34] *Kinkade v. Kinkade* (*In re Kinkade*), 707 F.3d 546, 548 (5th Cir. 2013) (citing to *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003)); *see also Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).
[35] *In re Fauser*, No. 10-31501, 2015 WL 877451, at *1-2 (Bankr. S.D. Tex. Feb. 26, 2015) (citing to *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 497 F. App'x. 400,

genuine dispute through specific evidence, which includes the requirement that the non-movant demonstrate "the manner in which that evidence supports [their] claim."[36] The burden shifts to the non-movant only if the movant should meet its burden of demonstrating the "absence of any genuine issues of material fact," at which time the non-moving party must "establish that there is a genuine issue of material fact in dispute."[37] A party who fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then Rule 56(c) requires that summary judgment be granted against that party.[38]

## III. Analysis

### a. Whether Collateral Estoppel Applies

As a preliminary matter, the Court must determine whether preclusive effect must be given to the state court default judgment. Much to the Court's surprise, neither party raised this issue. Nevertheless, the Court trudges on. While claim preclusion—or res judicata—is inapplicable in bankruptcy nondischargeability proceedings, issue preclusion—or collateral estoppel—may apply.[39] Here, because default judgment was entered in the 193rd Judicial District Court Dallas County, Texas, the Court applies Texas law of issue preclusion.[40] Under Texas law, a party is collaterally estopped from raising an issue when (1) the facts sought to be litigated in the second case were *fully* and *fairly litigated* in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.[41]

Two out of the three elements are already satisfied, which leaves the Court to determine

---

404 (5th Cir. 2012) (citing to *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997)).
[36] *In re Fauser*, 2015 WL 877451, at *3.
[37] *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005) (citing to *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[38] *Celotex*, 477 U.S. at 322.
[39] *Brown v. Felsen*, 442 U.S. 127 (1979); *In re King*, 103 F.3d 17 (5th Cir. 1997); *Grogan v. Garner*, 498 U.S. 279 (1991).
[40] ECF No. 19-1 at 224.
[41] *Matter of Pancake*, 106 F.3d 1242, 1244 (5th Cir. 1997) (emphasis added).

whether the facts sought to be litigated here were fully and fairly litigated in state court. The Fifth Circuit has held under Texas law that where a state court enters a default judgment after conducting a hearing or trial at which the plaintiff meets their evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes.[42] In cases of a post-answer default judgment, i.e., where defendant files an answer but fails to appear at trial, the court may not enter judgment based solely upon the pleadings; the plaintiff must present evidence sufficient to satisfy the traditional evidentiary burden.[43] Here, the state court default judgment fails to demonstrate that a hearing was conducted in which ZCN met its burden of proving that Defendant, inter alia, defrauded ZCN.[44] The only indication that ZCN met its burden at trial comes from the default judgment, in which the court states that it "considered the evidence as presented and reviewed the pleadings."[45] That statement per se is not enough to establish that Defendant received a full and fair adjudication. With that, the Court concludes that collateral estoppel does not apply.

**b. Objections**

Before turning to ZCN's Motion, the Court must also take up ZCN's Objections—of which there are four. ZCN's first objection is that Defendant's Response was not timely filed.[46] In support, ZCN points to Local Rule 9013-1(b) which provides that a party must respond within 21 days, the failure of which being relief may be granted without further notice.[47] But ZCN overlooks Rule 7016.[48] The Court's Scheduling Order[49] controls the deadlines for filing

---

[42] *Id.*
[43] *Stoner v. Thompson*, 578 S.W.2d 679 (Tex. 1979).
[44] ECF No. 19-1 at 224.
[45] *Id.*
[46] ECF No. 22.
[47] BLR 9013-1(b).
[48] FED. R. BANKR. P. 7016.
[49] ECF No. 11.

dispositive pleadings in this Adversary Proceeding. Here, ZCN was given until February 14, 2020 to file its dispositive motion. ZCN in fact filed its dispositive motion on February 11, 2020.[50] Conversely, Defendant was given until March 16, 2020 to file his Response, and in fact filed his Response on March 10, 2020.[51] As such, the Court overrules ZCN's first objection.

ZCN's second and third objection argues that portions of the declarations filed by Defendant and Mr. Mohammad are "shams and made in bad faith or for delay."[52] In support, ZCN points out that the declarations contradict Defendant's admissions in state court.[53] Although ZCN did not specifically point the Court to any legal authority, the argument implicates three doctrines that could exclude the declarations: the (1) judicial admission doctrine; (2) judicial estoppel; and (3) sham affidavit doctrine.

**1. Judicial Admission Doctrine**

Whether Defendant is precluded from stating a claim contrary to his claim in state court depends on whether the claim constitutes judicial admissions. The Fifth Circuit has distinguished judicial admissions from ordinary evidentiary admissions.[54] Judicial admissions are formal concessions in the pleadings or stipulations by a party or counsel that binds the party making them.[55] On the other hand, evidentiary admissions may be controverted or explained by the party.[56] Evidentiary admissions include "superseded or withdrawn pleadings in the same proceeding, answers to interrogatories, as well as other statements admissible under Federal Rule of Evidence 801(d)(2).[57]"

[50] ECF No. 18.
[51] ECF No. 21.
[52] ECF No. 22 at 2.
[53] *Id.*
[54] *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).
[55] *Id.*
[56] *Id.* at 476-77.
[57] *Hamman v. Lyle* (*In re Houston Bluebonnet, L.L.C.*), No. 16-03251, 2020 Bankr. LEXIS 465, at *60-61. (Bankr.

The Court has previously stated that admissions in conjunction to requests for admission constitute judicial admissions.[58] However, judicial admissions "are not conclusive and binding in a separate case from the one in which the admissions are made."[59] In addition, statements made in a different case cannot be considered judicial admissions in another.[60] As such, statements made in a separate case are not binding in a pending case.[61]

In the present case, Defendant's state court admissions—which were made in a separate case—are not binding and conclusive against him, and therefore not judicial admissions. Furthermore, Defendant provided an explanation for the inconsistent statements.[62] As to Mr. Muhammad's declaration, the judicial admission doctrine does not apply because he is a nonparty in the present case and the admissions were filed as part of Defendant's Responses.[63]

**2. Judicial Estoppel**

The doctrine of judicial estoppel bars a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.[64] Because judicial estoppel is equitable in nature, the Court may invoke it at its discretion to protect the integrity of the judicial process.[65] A party is judicially estopped when (1) the party's position is inconsistent with one asserted in a prior case, (2) the previous court accepted the party's original position, thus creating the perception that one or both courts were misled, and (3) the party did not take the inconsistent positions inadvertently.[66]

---

S.D. Tex. Feb. 20, 2020).

[58] *Id.* at *60.

[59] *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001); *see also* FED. R. CIV. P. 36(b).

[60] *Hamman*, 2020 Bankr. LEXIS at *61.

[61] *Id.*

[62] *See* ECF No. 21.

[63] ECF No. 19-1 at 194-202.

[64] *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x. 381, 390 n.3 (5th Cir. 2013).

[65] *Id.*

[66] *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012).

Only the second and third elements are at issue here because Defendant's assertion that Mr. Muhammad used Defendant's signature stamp to execute the Release and Pay Applications is clearly inconsistent with his state court admission. The Fifth Circuit has stated that the second element is satisfied when a court "necessarily accepted, and relied on" the party's position.[67] Here, it is uncertain whether the state court accepted and relied on Defendant's admission in rendering default judgment. The state court's statements that it "considered the evidence" and "reviewed the pleadings" does not conclusively establish that it "accepted and relied on" Defendant's assertion that he signed the Pay Applications.[68]

The third element is also not established because Defendant claims that the information provided in state court discovery was incorrect, and would have been amended had he had the opportunity to do so.[69] At this stage in the proceeding, this Court cannot finally determine whether Defendant's inconsistent position was due to inadvertence. Nevertheless, it is not necessary to scrutinize the explanation because the absence of the second element is sufficient to save Defendant from being estopped. As for Mr. Muhammad's declarations, judicial estoppel does not apply for the same reasons stated for the judicial admission doctrine.

**3. Sham Affidavit Doctrine**

The sham affidavit doctrine provides that a nonmovant cannot manufacture disputed material facts where none exists, and thus cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, their previous testimony.[70] While the Fifth Circuit has not addressed whether the sham affidavit doctrine

[67] *Hall v. GE Plastic Pacific PTE, Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003) (citations omitted).
[68] ECF No. 19-1 at 224.
[69] *See* ECF No. 21 at 12.
[70] *See Jennings v. Brazoria Cty.*, No. 3:17-CV-00243, 2018 WL 7625012, at *7 (S.D. Tex. Dec. 12, 2018); *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984).

applies if the testimony is from a different proceeding, a district court within the Fifth Circuit has ruled in the affirmative.[71] However, if the doctrine is applied in the present case, it would be in conflict with the judicial admission doctrine and Federal Rule of Civil Procedure 36(b)'s provision which states that "[a]n admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding."[72] Nevertheless, the conflict does not have to be resolved here because "courts in the Fifth Circuit appear to apply the sham affidavit doctrine only when the declaration contradicts *sworn* testimony or statements.[73]" The district court declined to apply the sham affidavit doctrine after finding that the document was unsworn.[74] Here, Defendant's state court admissions were neither signed under penalty of perjury nor attested by a notary public.[75] Thus, the sham affidavit doctrine does not apply in this case. Lastly, these declarations merely raise a fact issue as to whether or not Defendant signed the Pay Applications and Releases that CDG transmitted to ZCN. As such, the Court overrules ZCN's second and third objections.

ZCN's fourth and last objection is that the phrase "in order to pay CDG subcontractors" in paragraph 9 of Mr. Muhammad's declaration should be: (1) stricken on the basis of hearsay; and (2) is not the best evidence of whether anyone was paid.[76] Hearsay is an out of court statement that is offered in evidence to prove the truth of the matter asserted.[77] For evidence to be considered by the court during the summary judgment stage, the content or substance submitted to support an assertion that a fact cannot be or is genuinely disputed must be

[71] *Quicksilver Res., Inc. v. Eagle Drilling LLC*, No. H-08-868, 2010 U.S. Dist. LEXIS 110941 (S.D. Tex. Oct. 19, 2010).
[72] FED. R. CIV. P. 36(b).
[73] *Jennings*, 2018 WL 7625012 at *7 (citing to *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)) (emphasis added).
[74] *Id.*
[75] ECF No. 19-1 at 194–202.
[76] ECF No. 22 at 2.
[77] FED. R. EVID. 801.

admissible itself, *or* must contain evidence that will be presented in an admissible form at trial.[78]

Here, Mr. Muhammad's declaration that he used the stamp of Defendant's signature in his capacity as Chief Financial Officer to perfect the receipt of monies due and payable to CDG "in order to pay CDG subcontractors" is inadmissible hearsay only if it cannot be presented in an admissible form at trial. One obvious form is direct testimony. Both parties indicated their intent to call Mr. Muhammad as a witness at trial.[79] Therefore, Mr. Muhammad's testimony at trial concerning his declaration and using Defendant's stamp signature in his capacity as CFO would be an admissible form of evidence. Therefore, because the basis of the hearsay objection as to its content can be remedied at trial, ZCN's objection is overruled.

Now onto ZCN's best evidence objection. Under the best evidence rule, a party seeking to prove the content of a writing must produce the original writing itself.[80] An "original" writing includes a "printout—or other output readable by sight—if it accurately reflects the information it contains."[81] While Rule 1002 requires production of an original when the proponent of the evidence seeks to prove the contents of the writing, it does not require production of a document simply because the document contains facts that are also testified to by a witness.[82]

ZCN argues that the phrase within Mr. Muhammad's declaration "in order to pay CDG subcontractors" violates the best evidence rule because it is not the best evidence of whether anyone was paid. However, Mr. Muhammad's declaration—at least for summary judgment

---

78 *Santos v. Murdock* 243 F.3d 681, 683–82 (2d. Cir. 2001) (emphasis added); *see also* 1 *Moore's Federal Practice*, § 56.91 (Matthew Bender 3d ed.).
79 *See* ECF No. 32.
80 FED. R. EVID. 1002.
81 *Id.*; *see also Time Ins. Co. v. Estate of White*, 447 F. App'x. 561, 565 (5th Cir. 2011) (holding that electronically stored insurance policy documents qualify as original documents).
82 *See Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994); *see also Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 51 (1st Cir. 1999) (quoting *Allstate* for the proposition that there is no general rule that proof of a fact will be excluded unless the proponent furnishes the best evidence in his power, and reasoning that a plaintiff can prove he filed a particular piece of paper simply through his own trial testimony, and does not need to furnish said piece of paper).

stage—satisfies the intent of Rule 1002.[83] Thus, the best evidence objection is overruled. Now disposing of the prefatory issues, the Court turns to ZCN's Motion.

**c. ZCN's Motion**

Pursuant to its Motion, ZCN is only seeking summary judgment on its claims for fraud and/or false representations under 11 U.S.C § 523(a)(2), and larceny under 11 U.S.C. § 523(a)(4).[84]

**1. Actual Fraud Pursuant to 11 U.S.C. § 523(a)(2)(A)**

ZCN alleges that it is entitled to summary judgment against Defendant under 11 U.S.C. § 523(a)(2) for actual fraud, and as such, Defendant is indebted and has a non-dischargeable debt to ZCN in the amount of $127,462.66.[85]

Any debt obtained by actual fraud is deemed nondischargeable under § 523(a)(2)(A). Here, a finding of actual fraud will only be shown if ZCN proves that (1) Defendant made a representation; (2) at the time the representation was made, Defendant knew it was false; (3) Defendant made the representation with the intention and purpose to deceive ZCN; (4) ZCN relied on said representation; and (5) ZCN sustained losses as a proximate result of the representation.[86]

Onto the first element. ZCN argues there is no genuine dispute that by signing—and admitting to signing—the Pay Applications and certification payment forms at issue, Defendant made a representation to ZCN that such amounts were paid to its subcontractors and materialmen, when in fact said amounts were not.[87] In support, ZCN points to multiple exhibits

---

[83] *See Allstate Ins. Co.*, 27 F.3d at 1543; *Simas*, 170 F.3d at 51.
[84] *See* ECF No. 18.
[85] *Id.* at 3-4.
[86] *In re Holdaway*, 388 B.R. at 773.
[87] ECF No. 19 at 5.

showing: (1) CDG signed Pay Applications and certifications dated February 28, 2017, March 31, 2017, April 30, 2017, and May 31, 2017; (2) Defendant's answers to state court request for admissions that he signed the Pay Applications and certifications, and a declaration from Zach Binns, the chief financial officer of ZCN, stating that he relied on the truthfulness of the Pay Applications and certifications described above.[88]

Defendant argues in his Response that a genuine dispute as to a material fact exists because contrary to the state court admissions, it was the chief financial officer of CDG, Taariq Muhammad, who executed the Pay Applications and certifications using a stamp that contained Defendant's signature.[89] Corroborating this are declarations of both Defendant and Taariq Muhammad.[90] Defendant's declaration states that he authorized Mr. Muhammad to obtain, create, and use his signature stamp to effectuate the application on CDG financial documents.[91] Defendant however, was not aware that several Pay Applications and Releases were executed using his signature stamp, and denied signing or applying his signature stamp to any Pay Application or Release related to CDG's Contract with ZCN.[92] Mr. Muhammad's declaration supported Defendant's position.[93]

ZCN's Reply argued that Defendant's Response and position was irrelevant, because (1) Defendant had already admitted to signing the Pay Applications in the state court admissions, and (2) regardless of Defendant's assertion that he did not consent or have knowledge of Mr. Muhammad effecting Defendant's stamp in connection with Pay Applications and Releases, the

---

[88] *See* ECF No. 19-1 at 76-81, 83-85, 87-92, 129-135, 181-189, 195-203.
[89] ECF No. 21 at 10.
[90] ECF Nos. 21-1, 21-2.
[91] ECF No. 21-1 at 2.
[92] *Id.*
[93] ECF No. 21-2.

imputation of fraud for nondischargeability purposes still applies.[94] In support, ZCN cites to Texas agency law, claiming that because Defendant authorized Mr. Muhammad to effect Defendant's signature stamp on CDG financial documents, Defendant is vicariously liable for Mr. Muhammad's actions.[95]

Here, the Court has already disposed of the argument relating to Defendant's prior state court admissions.[96] Regarding ZCN's vicarious liability argument, the Court looks to Texas law, which states that a principal is liable for the torts of his agent that are committed in the course and scope of their employment.[97] However, ZCN provided no evidence to indicate that Mr. Muhammad acted as Defendant's agent. What is apparent is that Defendant has presented a genuine issue of material fact of whether he made a representation to ZCN, thus the Court denies summary judgment as to ZCN's 11 U.S.C § 523(a)(2)(A) actual fraud claim.

**2. False Representations Pursuant to 11 U.S.C. § 523(a)(2)(A)**

To prove nondischargeability under a "false representation" theory, ZCN must prove that Defendant's representations were (1) knowing and fraudulent falsehoods; (2) describing past or current facts; and (3) that were relied upon by the creditor.[98] As stated supra, a genuine issue of material fact as to whether Defendant made a representation that monies provided by ZCN were paid to its subcontractors and materialmen exists. Accordingly, the Court denies summary judgement as to ZCN's § 523(a)(2)(A) claim for false representation.

**3. Theft Pursuant to 11 U.S.C. § 523(a)(4)**

ZCN argues that it is entitled to summary judgment pursuant to its larceny claim under 11

[94] ECF No. 22.
[95] *Id.*
[96] *See supra*.
[97] *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).
[98] *In re Rifai*, 604 B.R. 277, 308 (Bankr. S.D. Tex. 2019).

U.S.C. § 523(a)(4) because (i) ZCN had a possessory right to the property; (ii) Defendant unlawfully appropriated the property by taking it without ZCN's effective consent; and (iii) Defendant appropriated the property with the intent to deprive ZCN of the property.[99] As a result of said alleged liabilities, Defendant is indebted and has a non-dischargeable debt to ZCN in the amount of $139,500.00.[100]

For purposes of § 523(a)(4), larceny is to be interpreted under federal common law.[101] While ZCN argues that state law may be applied, the Court declines to do so.[102] Larceny for dischargeability purposes under § 523(a)(4) is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner.[103] As the definition implies, larceny requires ZCN to prove fraudulent intent on Defendant's part.

Here, similar to ZCN's § 523(a)(2)(A) claim, the Court finds that the declarations provided by Defendant and Mr. Muhammad create a genuine dispute regarding Defendant's knowledge of the Pay Applications and certifications and whether Defendant had the necessary fraudulent intent to deprive ZCN of its property. As such, the Court denies ZCN's Motion as to its 11 U.S.C. § 523(a)(4) claim.

## III. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[99] *Id.* at 2.
[100] *Id.* at 3-4.
[101] *In re Barrett*, 156 B.R. 529, 533 n.3 (Bankr. N.D. Tex. 1993).
[102] *See Cent. Investors Real Estate Corp. v. Powell* (*In re Powell*), 54 B.R. 123, 125 (Bankr. D. Or. 1983) (holding that if state definitions rather than federal definitions applied, dischargeability might be rendered nonuniform because of the varying state law definitions).
[103] COLLIER ON BANKRUPTCY ¶ 523.10 (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also Rifai*, 604 B.R. at 326.

SIGNED 07/01/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge